Sharon H. BALL, formerly known as Sharon H. Kanzler, Plaintiff,

v.

The CITY OF CHEYENNE, WYOMING; and David Renner, in his individual and official capacities; Defendants.

No. 93-CV-0060-J.

United States District Court, D. Wyoming.

Oct. 29, 1993.

804

Charles Graves, Cheyenne, WY, for plaintiff.

Nick Vassallo, Asst. Atty. Gen., Cheyenne, WY, for defendant Renner individually.

Patrick Hacker, Cheyenne, WY, for defendant City of Cheyenne and defendant Renner, in his official capacity.

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter having come before the Court on the motions of defendants City of Cheyenne and David Renner for summary judgment, and a hearing having been held on October 20, 1993, the Court having considered the arguments of counsel, the materials filed both in support of and in opposition to the motions, and being fully advised in the premises, now FINDS and ORDERS as follows:

### BACKGROUND

This action was commenced by plaintiff Sharon H. Ball, formerly known as Sharon H. Kanzler, on February 19, 1993, against the City of Cheyenne, Wyoming, and David Renner, in his individual and official capacities. Plaintiff has asserted a claim against both defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for alleged sexual harassment arising out of what she contends was a hostile working environment. Secondly, she has asserted a claim against the City of Cheyenne pursuant to 42 U.S.C. § 1983 for the denial of equal protection resulting from the City's alleged maintenance of an environment that is hostile, degrading and abusive toward women. Thirdly, plaintiff has asserted a claim against the City of Cheyenne for wrongful, constructive discharge in violation of Wyoming's public policy against the sexual harassment of employees in the workplace. Finally, plaintiff has asserted a claim against defendant Renner for intentional infliction of emotional distress.

Plaintiff was employed by the City of Cheyenne Police Department from July 12, 1982, through August 14, 1991, as a police dispatcher. During her employment with the Police Department, plaintiff developed a friendship with defendant David Renner, a peace officer employed by the Cheyenne Police Department. Plaintiff claims that beginning in mid-March of 1991, and continuing for a period of approximately six weeks, Renner's conduct toward her changed and he engaged in behavior that was both offensive and unwelcomed.

The first identified deviation in behavior occurred at approximately 4:00 a.m. one morning in mid-March when plaintiff was driving home from work. According to plaintiff, as she drove toward her home, a car approached her from behind at a high rate of speed. Plaintiff stopped when she realized that she was being followed by a squad car. As the car passed her, she noticed that it was driven by Renner. When she pulled into her driveway, Renner came around her and squealed to a stop in front of her house. By that time, she had run to her front door and Renner called out to her, "Hey, babe, come here." Plaintiff states that this frightened her and she responded by locking herself inside the house.

Following this incident, plaintiff claims that Renner started coming into the radio room where she worked more frequently than he had in the past. She states that he

would sit and stare at her while she was attempting to do her radio dispatch job.

Plaintiff also claims that Renner asked her when they were going to go to Fort Collins again so that she could teach him to two-step. Plaintiff acknowledges that she and defendant Renner had gone to Fort Collins in the past but she states that she advised Renner that they were not going to go to Fort Collins again and that she did not want to teach him to two-step. Later that night, plaintiff claims that Renner approached her, grabbed her, pulled her body up next to his, and started to slow dance. She told him to leave her alone and pushed him away.

Plaintiff claims that on another occasion, Renner put his arm around her while she was talking with Officer Dale Karl and pulled her to him. She knocked his arm away, said, "don't," and left the room with a disgusted look on her face. Plaintiff also describes occasions when defendant Renner would initiate conversations with her in front of her boyfriend Greg Ball in order to make him feel left out. Finally, plaintiff claims that Renner attacked her in a utility closet in the dispatch room on May 1, 1991. According to plaintiff, Renner followed her into the closet and pulled the door shut behind him. The light was not on. Renner grabbed plaintiff and pulled her to him. She pushed away from him and the door flew open. Renner "took a stance" and pulled the door shut. Plaintiff states that she was very scared and angry and that she attempted to call for help on a portable radio that was inside the closet. As she reached for the radio, Renner tried to grab it away from her, and she managed to escape from the closet. Plaintiff's co-worker, Sue Pexton, was approximately eight feet away from the closet. She has stated that she saw Renner follow plaintiff into the closet and that she heard a click on the radio and a commotion in the closet. She does not know what actually occurred inside the closet.

After the closet incident, plaintiff returned to her console in the dispatch room. She asserts that later that night, Renner approached her console where she was sitting with her feet up on the table. He came up to her and pushed his crotch against her leg.

She was not able to complete her shift that evening and she reported the events involving Renner to Cheyenne Police Department Chief Patterson and Lt. Powell the next morning.

Plaintiff claims that the Police Department did not adequately and appropriately investigate her charges and that they failed to take appropriate steps to remedy the situation. She did not return to work and subsequently resigned her position on August 14, 1991, after exhausting her sick leave and vacation time.

Plaintiff filed a charge of discrimination with the Fair Employment Practices Division of the Wyoming Department of Employment and with the Equal Employment Opportunity Commission ("EEOC") on June 14, 1991. Although plaintiff identified Renner in her intake questionnaire, he was not identified as a respondent in plaintiff's formal discrimination charge. The Wyoming Department of Employment issued a finding of probable cause that plaintiff suffered sexual harassment and that an offensive work environment existed at the Cheyenne Police Department and the United States Department of Justice issued a Notice of Right to Sue on November 27, 1992. The right to sue letter did not name defendant Renner as a respondent. This lawsuit followed.

### STANDARD OF REVIEW

■ Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. In determining whether these burdens have been met, the Court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.*, 648 F.2d 1272 (10th Cir.1981).

## DISCUSSION

### I. *Defendant City of Cheyenne's Motion for Summary Judgment.*

The City of Cheyenne has moved for summary judgment arguing that: (1) the "hostile work environment" allegation should be dismissed; (2) the City is not liable for any alleged sexual harassment on the part of defendant Renner; (3) plaintiff's wrongful discharge tort claim based on Wyoming public policy should be dismissed; and (4) plaintiff's equal protection claim should be dismissed.

### A. *Hostile work environment.*

The City of Cheyenne urges the Court to dismiss plaintiff's allegation of a hostile work environment on the ground that plaintiff did not terminate her employment with the Cheyenne Police Department for any reason other than defendant Renner's alleged attacks. The motion is based upon the plaintiff's admissions that nothing about the environment at the Police Department would have precluded her continued employment with the Police Department. Instead, plaintiff has admitted that the sole reason for leaving the Police Department was the sexual harassment she received from Renner. By admitting that the circumstances of the allegedly hostile work environment were insufficient to preclude her continued employment, the City argues that plaintiff has demonstrated that any alleged general work environment was not the proximate cause of her loss of employment. Accordingly, the City seeks summary judgment dismissing this portion of the Complaint.

For the reasons outlined below, the Court finds that the motion for summary judgment should be denied.

### B. *Employer liability for defendant Renner's actions.*

The City of Cheyenne seeks summary judgment dismissing plaintiff's Title VII claim on the grounds that Renner was not plaintiff's supervisor, the City had sexual harassment policies in place, and the City conducted an adequate and appropriate internal investigation of plaintiff's allegations immediately upon learning of her complaints. The City contends that to the extent defendant Renner did sexually harass plaintiff, in the absence of any supervisory authority over plaintiff, the situation involved nothing more than co-employee harassment for which it is not liable. Any harassment committed by Renner is contrary to the express policies of the City of Cheyenne and the Police Department and therefore not actionable against the City of Cheyenne.

Plaintiff contends that neither the alleged harasser's supervisory authority over her nor the existence of anti-harassment policies preclude liability on the City's part. Title VII of the Civil Rights Act of 1964 makes it:

an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). An employer is "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such person...." 42 U.S.C. § 2000e(b).

■ The courts have interpreted Title VII as prohibiting two types of sexual harassment: (1) *quid pro quo* sexual harassment; and (2) hostile work environment sexual harassment. The first type of harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits. *See Hicks v. Gates Rubber*

*Co.,* 833 F.2d 1406, 1413 (10th Cir.1987). This type of prohibited sexual harassment is not alleged in the present case. Rather, it is the second form of harassment that is at issue here. Hostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)). For such harassment to be actionable, "it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405. Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987) (citations omitted).

■ To prove a hostile work environment claim under Title VII, the plaintiff must show: (1) that the conduct in question was unwelcome; (2) that the harassment was based on sex; (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989).

■ There is no dispute that Renner's conduct was unwelcome or that the conduct complained of was based on sex. Whether Renner's harassment was sufficiently severe or pervasive is "quintessentially" a question of fact and summary judgment is not appropriate unless, accepting plaintiff's evidence as true and drawing all reasonable inferences in her favor, the trier of fact could not reasonably conclude that Renner's conduct was so severe or pervasive as to create an abusive work environment. *Id.* To determine whether harassment was sufficiently severe or pervasive, the trier of fact must examine the evidence both from an objective perspective and from the point of view of the victim. The Court cannot focus solely on the plaintiff's subjective reaction, because "[a]n em-

ployee may not be unreasonably sensitive to his [or her] working environment." *Id.* at 105 (citations omitted). In order to prevail on a hostile environment claim, the plaintiff must first demonstrate that the harassment interfered with her ability to perform her work or that it significantly affected her psychological well-being. If the plaintiff satisfies this burden, then the trier of fact must determine whether the harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position. *Id.* This inquiry involves the determination of issues of material fact precluding the entry of summary judgment.

Assuming that the trier of fact were to find that Renner's actions were sufficiently severe or pervasive as to alter plaintiff's employment conditions, there remains the inquiry as to whether that conduct can be imputed to the City of Cheyenne. In *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417–18 (10th Cir.1987), the Tenth Circuit identified three alternative bases upon which an employer may be held liable for an agent's hostile work environment sexual harassment: (1) the tort was committed by an employee while acting within the scope of his or her employment; (2) the tort was committed by an employee acting outside the scope of his or her employment but the employer was negligent or reckless in failing to respond to the harassment; or, (3) the tort was committed by an employee acting outside the scope of his or her employment who purported to act or to speak on behalf of the employer and there was reliance upon apparent authority, or the employee was aided in accomplishing the tort by the existence of the agency relation.

The Tenth Circuit recognized that the first of these alternatives is largely inapposite to sexual harassment cases because "[s]exual harassment simply is not within the job description of any supervisor or any other worker in any reputable business." *Id.* at 1417–18 (citations omitted).

Under the third alternative, the City of Cheyenne may be liable for Renner's conduct only if Renner, acting outside the scope of his employment, purported to act or to speak on behalf of the City of Cheyenne and there was

reliance upon apparent authority, or if he was aided in accomplishing the sexual harassment by the existence of the agency relation. Plaintiff clearly has failed to demonstrate that Renner had any supervisory authority over her position and there is nothing in the record to indicate that Renner proposed to act or speak on the City's behalf. Accordingly, the only basis upon which plaintiff may prevail on her claim against the City is under the second alternative delineated in *Hicks.*

▮ In order to impute Renner's conduct to the City of Cheyenne, the Court must find that the City was negligent or reckless in failing to respond to a hostile work environment created by defendant Renner. Employer negligence in this context is defined as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572, 577 (10th Cir.1990) (citations omitted). *See also Baker v. Weyerhaeuser Co.,* 903 F.2d 1342 (10th Cir.1990). The Court looks to whether the employer took immediate and appropriate corrective action. *Hirschfeld v. New Mexico Corrections Dept,* 916 F.2d 572, 577 n. 4 (10th Cir.1990).

Plaintiff alleges that the City failed to respond adequately and appropriately to her charges of sexual harassment. She claims that although the City conducted an internal affairs investigation, it ignored or gave little or no weight to eyewitness testimony and suggested that her past participation in sexual comments affected her credibility. She further claims that the City provided no relief to address her emotional distress, refusing her request for vacation time, refusing her a leave of absence, and refusing to reassign her to a work shift different from Renner's.

The City, on the other hand, claims that the Police Department responded immediately and appropriately by providing plaintiff an immediate hearing on her complaint, by advising her that the complaint was a serious matter that would be fully investigated, and that Renner would be ordered to avoid con-

tact with plaintiff. The investigation was conducted and Renner was officially reprimanded for the conduct the Police Department was able to corroborate, i.e., the incident in the closet and the physical contact that was witnessed by Officer Karl. When plaintiff subsequently complained to Lt. Powell that her then boyfriend, now husband, had seen Renner's car near her house, Lt. Powell questioned Renner and instructed him to stay away from the neighborhood even though Renner claimed he had been in the neighborhood legitimately to visit his girlfriend who lived nearby. There were no subsequent complaints of Renner being seen in plaintiff's neighborhood once he was confronted by Lt. Powell.

Because this inquiry also involves disputed facts, the issue cannot be resolved on summary judgment. Accordingly, the City's motion for summary judgment on plaintiff's Title VII claim should be denied.

## C. *Wrongful discharge claim based upon Wyoming public policy.*

▮ In the third claim of plaintiff's Complaint, she asserts that the City of Cheyenne violated Wyoming's public policy as established by § 27–9–105, W.S. 1977, Article 1, § 2 of the Wyoming Constitution, and the Cheyenne Police Department Policy and Procedure Manual, all of which require the City to prevent sexual harassment of employees in the workplace. She claims that the Cheyenne Police Department fostered a hostile environment that was degrading to women and that resulted in her constructive discharge in violation of Wyoming's public policy against sexual harassment. The City of Cheyenne argues that this claim must be dismissed for two reasons: (1) Wyoming does not recognize the independent wrongful discharge action that plaintiff has asserted in her Complaint; and (2) Wyoming's worker's compensation laws preclude such an action.

The Wyoming Supreme Court addressed the question of a state law claim for discharge allegedly based on sex discrimination in violation of public policy in *Allen v. Safeway Stores, Inc.,* 699 P.2d 277 (Wyo.1985). Holding that the only remedy for such com-

plaints lies in the statutory procedures dealing with sex discrimination, the Court denied the independent action stating:

> A tort action premised on violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated. If there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy.

*Id.* at 284. The court noted that the Wyoming Fair Employment Practices Act of 1965, § 27–9–101 et seq., W.S. 1977, and 42 U.S.C. § 2000e, *et seq.,* provide a remedy for discharge based on sex discrimination. *Id.*

Although the Wyoming Supreme Court recognized the existence of a public policy exception in *Griess v. Consolidated Freightways,* 776 P.2d 752 (Wyo.1989), the court noted that the exception was required by the unique situation where "a strong public policy is embodied in the worker's compensation statutes and the constitution and no other remedy is available." In the present case, plaintiff has a remedy under the Wyoming Fair Employment Practices Act and under Title VII. Accordingly, the City's motion for summary judgment on plaintiff's public policy tort claim should be granted.

■ The City also argues that the public policy claim must be dismissed because plaintiff was covered by Wyoming's worker's compensation laws. *Baker v. Wendy's of Montana, Inc.,* 687 P.2d 885 (Wyo.1984). The test for determining whether the exclusive-remedy provisions of the Worker's Compensation Act operate to preclude actions against covered employers for intentional acts of employees is whether or not the claimed injury would be compensable under the Act. *Id.* at 889. Emotional injury is compensable under the Act and plaintiff received benefits for emotional distress. Thus, the injury clearly arose out of plaintiff's employment and the City is absolutely immune from this tort action. The City's motion for summary judgment should therefore be granted.

## D. *Equal Protection.*

In the second claim of her Complaint, plaintiff seeks damages for the alleged denial of equal protection. She claims that the City of Cheyenne classifies its employees on the basis of gender, "by maintaining a working environment that is hostile and demeaning to women, that forces women to suffer persistent verbal abuse, and that permits physical and mental harassment of women," while at the same time, maintaining a supportive and friendly working environment for men. Complaint, § 33.

■ The Tenth Circuit has recognized that sexual harassment under color of state law can violate the Fourteenth Amendment right to equal protection of the laws. *Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir. 1989). Although the City of Cheyenne can be sued as a person under 42 U.S.C. § 1983, it cannot be held liable on a respondeat superior theory for merely employing a tortfeasor. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Municipalities are subject to liability only for their official policies or customs. Municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by a [municipality's] officers." *Id.* at 690, 98 S.Ct. at 2036. Municipal custom, on the other hand, is "persistent and widespread ... practices of ... officials." *Id.* at 691, 98 S.Ct. at 2036.

■ Because the undisputed facts establish that the City of Cheyenne had an official policy *against* sexual harassment, in order to establish liability of the City under 42 U.S.C. § 1983, the plaintiff must demonstrate a widespread and persistent practice of sexual harassment in the Police Department thus establishing a custom of allowing sexual harassment in the workplace.

The Court cannot say as a matter of law that a widespread practice of sexual harassment did not exist at the Cheyenne Police Department. The plaintiff has admitted, however, that she left her job solely because of the actions of Renner and not because of any generalized situation at the Police Department. In addition, with the exception of

Renner, the undisputed evidence indicates that when plaintiff expressed her disapproval of statements and/or actions of other police officers which she found to be offensive, their behavior stopped. Accordingly, the Court finds that the undisputed facts indicate that plaintiff terminated her employment solely as a consequence of the conduct of defendant Renner during the subject six-week period in the spring of 1991. There is no disputed question of material fact upon which to go forward on plaintiff's equal protection claim and the City's motion for summary judgment should be granted.

## II. *Defendant Renner's Motion for Summary Judgment.*

Defendant David Renner has moved the Court for summary judgment on plaintiff's Title VII claim on the grounds that the Court lacks jurisdiction over the claim because plaintiff failed to comply with the jurisdictional prerequisite to suit by failing to name him in her original EEOC charge and because he is not an "employer" as that term is defined under Title VII. Renner also seeks summary judgment on plaintiff's claim for intentional infliction of emotional distress.

### A. *Subject matter jurisdiction under Title VII.*

### 1. *Plaintiff's failure to name defendant Renner in her EEOC charge.*

Defendant Renner contends that this Court lacks subject matter jurisdiction over plaintiff's Title VII claim as a consequence of plaintiff's failure to name him as a respondent in her formal discrimination charge. Plaintiff's discrimination charge named only the Cheyenne Police Department as a respondent and the right to sue letter was directed to the Police Department alone. Renner claims that he cannot be sued under Title VII until a right to sue letter has been issued as to him. He further contends that he has been prejudiced by the inability to participate in the EEOC investigation and because he was deprived of the right to conciliate.

■ The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the initiation of a lawsuit. A respondent must be named in the charge before he can be sued. 42 U.S.C. § 2000e–5(f)(1). The purpose of the naming requirement is twofold: (1) it provides the defendant with notice that his actions are the subject of an investigation; and (2) it provides the defendant with an opportunity to participate in the conciliation process before the EEOC.

■ Notwithstanding this jurisdictional requirement, because such complaints are written by laymen not versed either in the technicalities of pleading or the jurisdictional requirements of the Act, complaints to the EEOC are to be liberally construed in order to accomplish the purposes of the Act. *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1311 (10th Cir.1980). In *Romero,* the Tenth Circuit held that the omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII. The Court must evaluate the failure to name a party before the EEOC by considering the following factors:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether, under the circumstances, the interests of a named party are so similar as an unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 1311–12.

■ In the present case, plaintiff completed a detailed Intake Questionnaire for the Wyoming Department of Employment Fair Employment Program on June 7, 1991. She expressly identified Sgt. David Renner in the Intake Questionnaire as the person who had taken discriminatory action against

her. However, she listed the Police Department as the "employer or organization" about which she was complaining and she provided a detailed description of her complaints against the Police Department including its failure to grant her requests for vacation time off, worker's compensation, leave without pay, reimbursement for psychotherapy and medical bills, psychoanalysis for Sgt. Renner, and reassignment to a work shift other than the same shift as Renner. Plaintiff's official discrimination charge, although completed by Wyoming Fair Employment Practices Commission officials, was reviewed, amended, and executed by plaintiff on June 14, 1991. The Cheyenne Police Department was named as the "employer, labor organization, employment agency, apprenticeship committee, state or local government agency" who had discriminated against her. There is no explicit reference to Renner in the charge; it refers solely to the actions of the "harasser."

Although plaintiff claims that Renner was aware from the start of her formal discrimination claim, his journal indicates that on June 24, 1991, he was advised that the plaintiff had "filed a lawsuit against PD & City."

The question for resolution by the Court is whether the failure to name Renner in the formal charge deprived him of notice that his actions were the subject of an investigation and of the opportunity to participate in conciliation. The Court finds that the failure to name Renner in the formal charge deprived Renner of notice that he, as an individual, was a target of the EEOC investigation and further deprived him of the opportunity to participate in conciliation efforts. Clearly, plaintiff knew the identity of "the harasser" when she completed and signed the formal discrimination charge. Just as clearly, Renner's personal liability for the charges asserted against him in this lawsuit are sufficiently different from those asserted against the City of Cheyenne that he should have had the opportunity to participate in conciliation efforts before finding himself a named defendant in this lawsuit. The Court finds that Renner was prejudiced by the lost opportunity to participate in the conciliation efforts and further finds that there is no indication

that Renner, as the unnamed party, ever represented to the plaintiff that for the purposes of pursuing these complaints, she should proceed solely against the Police Department.

2. *Defendant Renner is not an "employer" within the meaning of Title VII.*

■ Defendant Renner further challenges the jurisdiction on the Court on the ground that he is not plaintiff's "employer" as that term is defined under Title VII. An employer is "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such person...." 42 U.S.C. § 2000e(b).

While the City of Cheyenne is clearly an employer within the meaning of the statute, Renner is not. An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989) (citations omitted). Although the supervisory employee need not have ultimate authority to hire or fire in order to qualify as an employer, as long as he has significant input into such personnel decisions, the requirement is met. *Id.*

■ Renner exercised no supervisory authority over plaintiff whatsoever. He had no authority to make decisions regarding her hiring or her termination, her performance reviews, promotions, or her discipline. At most, at those times when Renner was working as the patrol sergeant on night duty, he had authority to send plaintiff home if he felt that she was endangering the officers on the street who were under his control and command.

Plaintiff argues that Renner is an agent to the City under 42 U.S.C. § 2000e–(b) because he acted as the City's agent in carrying out the complained of acts of sexual discrimination. The Court finds that this argument strains the statutory meaning of employer beyond logic. Defendant Renner is entitled to dismissal of plaintiff's Title VII action as a matter of law.

3. *Dismissal of plaintiff's claims for emotional distress, punitives, and a jury trial.*

██ Defendant Renner urges the Court to dismiss plaintiff's claims for emotional distress, punitive damages, and for a jury trial on the Title VII claim. Prior to the enactment of the 1991 Civil Rights Amendments, a plaintiff was limited to equitable relief in the form of back pay, reinstatement, and/or front pay. *Manders v. Oklahoma ex rel. Dept. of Mental Health,* 875 F.2d 263, 266 (10th Cir. 1989). A plaintiff could not recover damages nor was there a right to a trial by jury.

The Civil Rights Act of 1991, Pub.L.No. 102–166, 105 Stat. 1071, effective November 21, 1991, post-dates the incidents of alleged sexual harassment that plaintiff complains of in this action. The Court agrees with defendant Renner that the additional rights conferred by the new law should not be applied retroactively. *See Henning v. Western Oil Tool & Manufacturing Co.,* No. 91–CV–1014–B (D.Wyo.) (Court held that the 1991 Amendments affect substantive rights and therefore should not be applied retroactively). Accordingly, summary judgment dismissing plaintiff's claim for compensatory and punitive damages and for a jury trial under Title VII is appropriate.

B. *Intentional infliction of emotional distress.*

Defendant Renner urges the Court to grant his motion for summary judgment as to plaintiff's claim of intentional infliction of emotional distress.

Plaintiff claims that defendant Renner· "stalked" her and engaged in intensive sexual harassment against her during the six-week period from the middle of March to the end of April, 1991. She claims that he followed her into a dark closet, pulled her against him, and blocked her exit. She claims that he approached her work station and pressed his crotch area against her leg, knowing that she would not welcome such behavior. This behavior, she contends, is sufficient to support a claim of intentional infliction of emotional distress. The Court does not agree.

██ The Wyoming Supreme Court first recognized the tort of intentional infliction of emotional distress in *Leithead v. American Colloid Co.,* 721 P.2d 1059 (Wyo.1986). In order to maintain an action for intentional infliction of emotional distress, there must be outrageous conduct "which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." *Id.* at 1066. For the plaintiff to recover for intentional infliction of emotional distress, the distress inflicted must be so severe that no reasonable person could be expected to endure it. *Id.* at 1066, 1067.

██ The Wyoming Supreme Court expressly stated that frivolous claims for intentional infliction of emotional distress can be weeded out at the summary judgment stage, noting that it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Id.* at 1066. Where reasonable minds may differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability.

Accepting all of plaintiff's allegations as true and drawing all reasonable inferences in her favor, the Court finds that this conduct, though perhaps offensive and objectionable, intimidating and hostile, fails to rise to the level of outrageousness required under the strict standards imposed by Wyoming law. Defendant Renner's motion for summary judgment on the claim of intentional infliction of emotional distress therefore should be granted.

CONCLUSION

For the reasons stated above,

IT IS ORDERED that the defendant City of Cheyenne's motion for summary judgment on the Title VII claim asserted by plaintiff in the first claim of her Complaint is DENIED as there are genuine issues of material fact regarding the alleged hostile work environment sexual harassment and regarding the corrective action taken by the City of Cheyenne.

IT IS FURTHER ORDERED that the defendant City of Cheyenne's motion for

summary judgment on the equal protection claim asserted by plaintiff in the second claim of her Complaint is GRANTED.

IT IS FURTHER ORDERED that the defendant City of Cheyenne's motion for summary judgment on the public policy tort claim asserted by plaintiff in the third claim of her Complaint is GRANTED.

IT IS FURTHER ORDERED that defendant Renner's motion for summary judgment dismissing the Title VII claim asserted by plaintiff in the first claim of her Complaint is GRANTED.

IT IS FINALLY ORDERED, that defendant Renner's motion for summary judgment dismissing the claim for intentional infliction of emotional distress asserted by plaintiff in the fourth claim of her Complaint is GRANTED.