Barbara **BESSO,** Plaintiff,

v.

**CUMMINS INTERMOUNTAIN, INC.,** Defendant.

No. 94–CV–217–J.

United States District Court,
D. Wyoming.

April 26, 1995.

**1518**

Harold F. Buck, Buck Law Offices, Walter Urbigkit, Cheyenne, WY, for plaintiff.

Lisa A. Yerkovich, Janet Hugie Smith, Ray, Quinney & Nebeker, Salt Lake City, UT, for defendant.

### DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter came before the court on March 24, 1995, for hearing on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. The court has considered Defendant's Motion for Summary Judgment, the supporting memorandum, Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment, Defendant's reply, the entire file in this case, has heard argument of counsel, is fully advised and finds and concludes as follows.

## FINDINGS OF FACT

1. Plaintiff Barbara Besso is a citizen of Wyoming. Defendant Cummins Intermountain, Inc., is a Utah corporation with its principal place of business in Utah.

2. Besso worked for Cummins from June of 1981, through November 6, 1992. In 1987, Besso and all other salaried employees at the Rock Springs branch office took an approximate 5% pay cut due to economic conditions. At the time of the pay cut, Besso was a clerical employee. The only other clerical employee in the Rock Springs office at the time of the pay cut was laid off. Besso's salary was later increased from the 1987 level.

3. Cummins terminated Besso in November of 1992, giving the elimination of her position of credit manager as the only reason for termination. Besso was doing a good job when terminated and had been doing a good job throughout her employment with defendant. Cummins agrees that it did not have any grounds for terminating defendant other than eliminating her position for economic reasons.

4. In 1992, Cummins had six offices with credit manager positions: Salt Lake City, Utah; Boise, Idaho; Elko, Nevada; Sparks, Nevada; Las Vegas, Nevada and Rock Springs, Wyoming. In four of these offices, including the Rock Springs office where Besso worked, the position was eliminated and the person holding the position was terminated. In the Elko office the individual holding the position left for reasons of her own and the company took the opportunity to eliminate the position and therefore did not rehire for the position. In the Boise office, the individual holding the position had additional responsibilities and was retained. Elimination of these credit manager positions took place over several years. The position in Rock Springs was eliminated first, in 1992, the Sparks position in 1993, the Elko position in late 1993 or early 1994 and the Las Vegas position in 1994. The position in the Boise office is the only one left to be centralized.

5. The elimination of the credit management positions was part of Defendant's company-wide efforts to centralize functions into the Salt Lake office.

6. At the same time it terminated Besso, defendant retained an employee in a different, and lower paying, clerical position in the Rock Springs office. This lower-paid employee is also a woman and she had less seniority than did plaintiff. The same year it terminated Besso, Cummins also terminated three mechanics from its Rock Springs office.

7. Twice during a week in July of 1992, a male co-employee sexually harassed Besso. The first time, he flipped file folders against her chest. The second time he pulled her bra strap. After the second incident, Besso complained to her supervisor and told him she wanted the complaint handled confidentially. Immediately upon being informed of the incidents, supervisory personal took action to stop the behavior and it was not repeated. The complaint was handled confidentially.

8. Besso alleges she was unfairly singled out and counselled for excessive talking on the phone shortly after reporting the harassment. However, immediately after the telephone incident, Plaintiff asked for and received her job performance evaluation. Her evaluation rated her performance excellent.

9. Bayne B. McMillan was the employee who made the decision to terminate Besso. Mr. McMillan was not aware that Besso had complained about sexual harassment or about how the harassment had been handled until after Besso was terminated. Besso herself informed Mr. McMillan of her prior harassment complaint when she spoke with him after she had been terminated.

10. During Besso's employment, Cummins had several versions of employee handbooks and continually updated its Policy Manual. At issue in this case are the 1979 Employee Handbook and the 1990 Employee Handbook. The Policy Manual provides for a three-month period of probationary employment. The 1979 Handbook outlines the company's grievance procedures. The grievance procedures are more fully set forth in the Policy Manual. The Policy Manual sets out a progressive disciplinary policy. Updating the Policy Manual was part of Besso's

job. Besso referred to the Policy Manual to answer any questions from other employees about the company's policies.

11. In 1990, Cummins issued a new Employee Handbook. The 1990 Handbook contains a disclaimer stating it is not an agreement or contract between Cummins and its employees. Besso signed a Statement acknowledging that she received the 1990 Handbook, that she understood she was an at will employee and that she understood the Handbook did not create a contract of guaranty of employment.

## CONCLUSIONS OF LAW

Besso filed this case seeking to recover on the following claims: (1) breach of an implied in fact contract arising from the 1979 Employee Handbook; (2) breach of the covenant of good faith and fair dealing; (3) sex discrimination; and, (4) punitive Damages.

■ Summary judgment will be granted if "the pleadings, depositions, ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A 'material' fact is one 'that might effect the outcome of the suit under the governing law.'" *Farthing v. City of Shawnee*, 39 F.3d 1131 (10th Cir.1994) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And "a 'genuine' issue is one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* The court views the evidence in the light most favorable to the nonmoving party. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie*

*and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). "To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings." *Id. citing* Fed. R.Civ.P. 56(e) and *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

■ The mere fact that both parties have filed motions for summary judgment does not constitute proper grounds for a decision that no genuine issues of material fact exist, but "the court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, § 2720, at 23 (1983).

### A. Breach of Implied Contract

Defendant seeks summary judgment contending: (1) Under either the 1979 or 1990 employee handbook, Besso is an at-will employee who could be terminated for no reason; and (2) even if the 1979 employee handbook created an implied in fact employment contract, Besso's termination did not violate that contract. Besso seeks partial summary judgment on the issue of breach of implied contract.

■ For the purposes of these motions for summary judgment and viewing the record in the light most favorable to Besso as the party opposing summary judgment, the court finds that the 1979 Employee Handbook and the Policy Manual together created an implied in fact contract of employment. Besso had access to the Policy Manual and it was part of her job to update it and refer to it to answer questions. The 1979 Handbook provides for a three-month probationary period for new employees. The 1979 Handbook states the company has discipline rules. It also states: "Rules concerning fighting, stealing, insubordination, and other personal problems and their corresponding penalties can be found in your supervisor's policy manual." The Policy Manual sets out a progressive disciplinary procedure. As part of her job, Besso had access to the policies and updated them and referred to them to answer questions from other employees. One

of the terms of employment implied from the 1979 Manual and the Policies is that termination of employees for cause would be done in accordance with the progressive disciplinary procedures promulgated by Cummins.

▮ The court does find that there are material issues of fact involved in the parties' contentions about the effect of the 1990 Handbook and Statement on any implied in fact contract created by the 1979 Handbook and Disclaimer. However, those issues of fact do not preclude summary judgment because the court finds that Besso has not established that under the facts she alleges, her termination violated the terms and conditions of the implied contract created by the 1979 Handbook and policies.

Besso contends her termination violated several policies. Policy number PER I–1A discussing advancement, provides:

A. Employment opportunities are and shall be open to all qualified applicants solely on the basis of their experience, aptitudes, and abilities.

B. Advancement is and shall be based entirely on the individual's achievement, performance, ability, aptitude, and potential for promotion. If at any time, two people have identical qualifications as described above, length of employment would then be the determining factor."

Policy number PER I–2 provides the company will not discriminate on the basis of sex, age or race when making "appointments for advancement (including upgrading and promotion), transfers, and terminations of employment (including layoffs . . . )."

Policy number PER IV–6 on the subject of seniority provides:

The company recognizes seniority as a factor in promotions, transfers, and layoff.

Seniority is the length of continuous employment with the company.

For the first 90 continuous days of employment, the employee has no seniority status. At the end of this probationary period, his seniority will date back to his date of hire. . . .

Policy no. PER IV–7 provides:

It is our policy to fill job vacancies and higher-rated jobs by the promotion of qualified employees within our company whenever possible.

1. In the selection of an employee to fill an ungraded job, the following qualifications will be carefully considered:

\* \* \* \* \* \*

f. Length of service.

\* \* \* \* \* \*

3. Where the above qualification factors are considered relatively equal among two or more employees considered for an upgraded or promoted job, length of service will be the determining factor.

All of the provisions relied upon by Besso do not, separately or together, create a right to never be terminated for economic reasons unrelated to performance such as was done in this case. Similarly, the provisions relied upon by Besso do not create a right to "bump" less senior employees who hold different positions. Recognizing seniority as "a" factor in layoffs does not give rise to an inference that it will be the only factor. This is especially true where a specific position was targeted for elimination and only one individual was holding the eliminated position. This case does not present a situation where there was a layoff of one person from a pool of two or more employees holding the same positions. Defendant's unrebutted evidence shows that the company eliminated the position of credit manager in its regional offices and that none of the former holders of the position were allowed to "bump" less senior employees. Besso has not raised an issue of fact that would show that the company-wide consolidation of the credit management services into its central office was motivated by anything but economic considerations.

### B. Breach of Covenant of Good Faith and Fair Dealing.

▮ It is undisputed that Besso and other employees in the Rock Springs office took a pay cut in 1987 for economic reasons. It is also undisputed that Besso continued her employment, doing a good job, for the next

five years. However, these undisputed facts do not constitute the type of "rare and exceptional" circumstances or the type of "special relationship" that would give rise to a duty of good faith and fair dealing of such a nature as to give rise to tort liability of the type recognized in *Wilder v. Cody Country Ch. of Commerce*, 868 P.2d 211, 221 (Wyo.1994).

■ Besso contends that accepting the pay cut gave rise to an expectation that the employer would be able to maintain its Rock Springs office and continue to employ her. At oral argument, Besso's counsel contended that the wage concession resulted in the defendant's being required to continue to employ Besso so long as it continued to make a profit.[1] This court does not agree. Such a position would grant lifetime tenure for employees anytime there were wage concessions from employees during an admitted economic downturn. Mandating continued employment for all employees who had made such concessions so long as a company remains profitable would drastically alter the terms of employment and impede the ability of both employees and employers to make changes in attempts to remain competitive in the marketplace.

■ The temporary concession of a cut in pay does not, by itself, mean that Besso could never be terminated, any more than it means that plaintiff could never receive a higher salary. In fact, by the time Besso was terminated she had received a salary increase over her 1987 salary.

In the *Wilder* case, *supra*, the Wyoming Supreme Court recognized that termination of a long-time employee for a minor rule infraction shortly before his retirement benefits vested would support the tort of breach of covenant of good faith and fair dealing in the context of employer-employee relationship. 868 P.2d at 221–22 *citing K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1366 (1987). As the Wyoming Supreme

Court noted, the special relationship in the *K–Mart* case was created by the employee " 'specially relying' on the employer's commitment to extended employment and retirement benefits for which he had remained with the company for nine and one-half years." *Wilder*, 868 P.2d at 222.

In our case there was a prior compromise by both employer and employee for economic reasons. Unlike the situation in the *K–Mart* case, Besso has not established Cummins made a commitment or a promise upon which she relied.

Besso also contends that when she made her complaint of harassment, she "had a special relationship with defendant of trust and reliance whereby she relied upon the Cummins to appropriately handle a charge of sexual harassment and trusted that she would not be retaliated against."

■ When an employee requests that a sexual harassment complaint be handled confidentially, this request does not, by itself, create the type of "special relationship" described in *Wilder*. Further, the undisputed evidence produced by defendant is that the complaint was handled confidentially. Similarly, as noted below, Besso has not come forward with any evidence that raises an issue of fact disputing defendant's evidence that the person making the decision to terminate Besso was unaware of her complaint.

The facts alleged by Besso do not establish a "special relationship" that would give rise to the duty of such a nature as to give rise to tort liability under a breach of the implied covenant of good faith and fair dealing. Besso has not met her burden of showing facts that, viewed in the light most favorable to her, could establish a prima facie cause of action for breach of covenant of good faith and fair dealing. Accordingly, the court will grant summary judgment for Cummins on this issue.

---

1. Plaintiff has not shown that the Rock Springs office was profitable at the time plaintiff was terminated. There had been significant losses for the Rock Springs office in 1990 and 1991. In the 12 months directly preceding her termination (November of 1991 through October of 1992) the Rock Springs office had a net *loss* of $40,331.

Plaintiff was terminated the first week in November of 1992. For all of that month the office had a profit. There was a significant profit in December of 1992, resulting in a total profit for 1992. The record does not reveal the month in which the three mechanics were laid off.

### C. Sexual Discrimination

Defendant initially challenges Besso's claim for sexual discrimination under Title VII as untimely. Plaintiff contends that the claim is timely as the charge relates back to the earlier and timely filed claim of age discrimination.

 Federal courts are without jurisdiction to hear employment discrimination charges which were not brought before the EEOC. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). However, a claim not expressly made to the EEOC may still be considered if it was within the scope of the charges actually made to the EEOC.

> [C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made.

*Id., following Powers v. Grinnell Corp.,* 915 F.2d 34, 38–39 (1st Cir.1990); *Butts v. City of New York Dep't of Housing,* 990 F.2d 1397, 1402 (2nd Cir.1993); *King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir.1976).

Besso had 300 days from the date of her termination, or until September 2, 1993, to timely file her claim of sex discrimination. Besso's June 2, 1993, letter to the EEOC states, "I also turned a sexual harassment [complaint in] to my Supervisor back in July, 1992. After that, it seems that things suddenly started down hill." The letter also states, "I am writing to file a 'Sex Discrimination' claim against" Cummins.

 Besso's claim of sex discrimination falls within the scope of the EEOC investigation and would reasonably grow out of the charge originally made because the letter and its allegations were part of the EEOC file. Therefore, Besso's claim of sex discrimination may be considered by this court.

Besso's claim for sex discrimination is based upon her allegation that "the motivating factor of Defendant's actions was on account of her sex and on account of her having complained of violations of the provisions of the sex discrimination laws." Complaint at 5. Defendant seeks summary judgment contending that Besso fails to state a prima facie case of sex discrimination under the law.

The Supreme Court has established, and this circuit has repeatedly adopted, a three-part test to determine whether the plaintiff has established a prima facie case under Title VII [42 U.S.C.] for a wrongful termination claim. Initially, the plaintiff must show that (i) she belongs to a protected class; (ii) she was qualified and satisfactorily performing her job; and (iii) she was terminated under circumstances giving rise to an inference of discrimination. Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee. Once the defendant has set forth a facially nondiscriminatory reason for the decision, the "factual inquiry proceeds to a new level of specificity." *[Texas Dept of Community Affairs v.] Burdine,* 450 U.S. [248] at 255, 101 S.Ct. [1089] at 1095 [67 L.Ed.2d 207 (1981)]. The plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based upon an impermissible motive. The plaintiff can prevail either directly by proving that the employer acted with the discriminatory motive or indirectly by showing that the stated reason for the discharge was a pretext for the sort of discrimination prohibited by [Title VII]." *St. Mary's Honor Ctr. v. Hicks,* [—— U.S. ——, —— n. 6], 113 S.Ct. 2742, 2752 n. 6 [125 L.Ed.2d 407] (1993).

*Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1416–17 (10th Cir.1993) (citations partially omitted).

 This general burden shifting analysis, originally announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is applicable to retaliation claims. *Sorensen v. City of Aurora,* 984 F.2d 349, 353 (10th Cir.1993). "To establish a prima facie case of retaliation [plaintiff] must show that: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment ac-

tion contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1381 (10th Cir.1994).

 The elements of a claim of sex discrimination based upon a "hostile work environment" sexual harassment[2] are as follows:

> [H]ostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonable interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances.

*Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1344 (10th Cir.1990) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

> To prove a hostile work environment claim under Title VII, the plaintiff must show: (1) that the conduct in question was unwelcome; (2) that the harassment was based on sex; (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer.

*Ball v. City of Cheyenne, Wyoming*, 845 F.Supp. 803, 808 (D.Wyo.1993).

In this case it is undisputed that Besso belonged to a protected class and that she was qualified and satisfactorily performing her job. However, Besso has not met her burden of producing evidence that raises an issue of fact disputing Defendant's evidence she was terminated because her position was eliminated and not because of filing a sexual

harassment claim. According to the deposition testimony of Bayne B. McMillan, in addition to being eliminated in the Rock Springs office, Besso's position was also eliminated in other offices in the region. All persons in those positions were terminated, including plaintiff. None of those persons was allowed to "bump" less senior employees from other positions. According to Mr. McMillan's deposition testimony, the reason that plaintiff and the other employees in like-positions in different satellite offices were terminated was "not performance issues, it was a consolidation, centralization strategy."

Besso alleges she was singled out for discipline for alleged violations of the company's telephone policy after she made the complaint but admits that she nonetheless received an excellent job review immediately after the telephone incident. Besso's unsupported allegation she was treated differently does not raise an issue of motivation because it does not raise an issue of fact that would rebut Defendant's evidence showing a nondiscriminatory motivation, namely that the person making the decision to terminate Besso did not know she had made a complaint and made the decision based upon the company's policy of centralization. "[C]onclusory statements concerning the validity of the defendant's justification are inadequate to overcome summary judgment. At this stage of the analysis, [the court is] charged to determine 'whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.'" *Martin*, 3 F.3d at 1417–18 *quoting MacDonald v. Eastern Wyoming Mental Health Ctr.* 941 F.2d 1115, 1121–22 (10th Cir.1991). As in *Martin*, Besso's evidence does not impeach the credibility of the affiants who the defendant presented as supporting its reasons for termination. 3 F.3d at 1418 n. 10.

 Thus, even if Besso's allegations did state a prima facie case of sex discrimination, defendant has come forward with a nondiscriminatory reason for her termination— the consolidation of credit management services in the Salt Lake City with the resultant

---

**2.** The other form of sexual harassment, quid pro quo sexual harassment, is not alleged in this

case. See *Ball v. City of Cheyenne*, 845 F.Supp. 803, 809 (D.Wyo.1993).

loss of the position of credit manager in the outlying offices. Besso has not come forward with any evidence to raise an issue of fact on Defendant's motivation.

Besso contends that the deposition testimony of Craig Palmer, the branch manager for the Rock Springs office, satisfies her burden of proof by showing that the work she was performing was performed by two males immediately after she left. Having reviewed the deposition excerpts relied upon, they show that Besso's female co-worker was scheduled to go on an extended leave of absence at approximately the same time as Besso was terminated. Instead of retaining Besso to cover her co-workers' duties while the co-worker was on leave, Mr. Palmer and his office manager covered the co-worker's duties. This does not show an issue of fact on whether *plaintiff's* duties were performed by individuals who were not members of the protected class.

 Besso has not stated a prima facie case of hostile work environment sexual harassment. Twice during a week in July of 1992, a co-employee had sexually harassed her. Besso complained to supervisors right after the second incident, telling them she wanted the complaint handled confidentially. Immediately upon being informed of the incidents, supervisory personnel took action to stop the behavior and it was not repeated.

Besso has not shown that these two incidents were sufficiently pervasive or severe enough to create an abusive working environment. Besso has not shown that the harassment was sufficiently severe "to interfere with her ability to perform her work or that it significantly affected her psychological well-being." *Ball*, 845 F.Supp. at 809. Similarly, Besso has not shown that there is any basis for imputing liability to her former employer. The incidents were promptly reported and Cummins took prompt and successful corrective action. Although the action may not have been as severe as Besso believes appropriate, it is undisputed that the action completely cured the problem and she was not subjected to any other harassment while she was employed by Cummins. It is also undisputed that Besso's complaint was handled in the confidential manner she had requested.

Besso has failed to come forward with affidavits or other evidence that raise an issue of fact on Mr. McMillan's lack of knowledge about her earlier sexual harassment complaint or the economic basis for eliminating her position. Besso has failed to show she was subjected to a hostile work environment sufficient to interfere with her ability to perform her duties or to affect her well-being or that her employer failed to discover or take action to prevent the sexual harassment. Accordingly, the court will grant Defendant's Motion for Summary Judgment on the issue of sex discrimination.

### D. Punitive Damages

The complaint for punitive damages fails because all of the underlying causes of action must be dismissed on summary judgment.

### CONCLUSIONS OF LAW

The court will enter an order denying Plaintiff's Motion for Summary Judgment. Although viewed in the light most favorable to her, her materials do establish the existence of an implied in fact contract of employment arising from the 1979 Employee Handbook and Policy Manual, she has not met her burden of producing evidence that the terms of that contract were breached when she was terminated because her position was eliminated as part of a company-wide centralization. The court will grant Defendant's Motion for Summary Judgment and dismiss the complaint.