David R. ALLEN and Barbara Allen,
Appellants (Plaintiffs),

v.

SAFEWAY STORES INCORPORATED, a
Maryland corporation, the State of Wy-
oming Department of Health and So-
cial Services, G.E. Rock, Sam Uresk,
Doe I and Doe II, Appellees (Defend-
ants).

No. 84–108.

Supreme Court of Wyoming.

May 2, 1985.

C.M. Aron and Sid L. Moller of Aron and Hennig, Laramie, for appellants.

Jack D. Palma, II, Carol A. Statkus, and Marilyn Kite of Holland & Hart, Cheyenne; Kathryn E. Miller and Gregory A. Eurich of Holland & Hart, Denver, Colo., for appellees Safeway Stores, Incorporated and G.E. Rock.

Vincent J. Horn, Jr., Cheyenne, for appellees The State of Wyoming Department of Health and Social Services and Sam Uresk.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellants David R. Allen and Barbara Allen were employees of appellee Safeway Stores, Incorporated (Safeway). Appellee Sam Uresk (Uresk) is an employee of appellee State of Wyoming Department of Health and Social Services (State), and as such conducted an inspection of the Safeway store at Rock Springs, which was under the management of David R. Allen, and of the Safeway store at Green River, which was under the control of Barbara Allen, as assistant manager in the absence of the store manager. David Allen and Barbara Allen are married. The inspection was with reference to the Special Supplemental Food Program for Women, Infants and Children (WIC) being administered by the State. After Uresk reported bad attitudes by the Allens to appellee G.E. Rock (Rock), immediate supervisor to David R. Allen and immediate supervisor of the store manager at Green River, who was the immediate supervisor of Barbara Allen, Rock discharged the Allens from their positions.

The Allens brought this action against Uresk and the State for intentional interference with a contract and against Rock and Safeway for breach of contract and for violation of public policy. The trial court granted the motion of the State and Uresk for summary judgment, and it dismissed the complaint against Rock and Safeway with prejudice. Appellants appeal from the summary judgment and the dismissal of the complaint.

We affirm.

## SUMMARY JUDGMENT

■ A summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), W.R.C.P. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of the cause of action. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975).

The basic facts in this case are not disputed. Uresk's inspections were for the purpose of determining whether or not the stores were complying with the WIC requirements; e.g., requesting ID folders from WIC customers, selling only approved foods to WIC customers, etc. She found the Rock Springs store fully in compliance with the WIC program and complimented the check-out clerk for following the WIC guidelines. The clerk asked Uresk to pass on the compliment to the clerk's supervisor, David Allen. During her conversation with David Allen, Uresk asked him if he had completed a price survey which she had requested by mail. Completion of the price survey was not required by the contract between WIC and the store, and David Allen said he had thrown the form away. He said to Uresk that if she wanted the survey, she should do it herself and that he did not approve of the program or of the government paying people to sit around on their derrieres. Uresk said he used the word " 'asses.' " David Allen said he used the word " 'butts.' " In her deposition, Uresk testified that at that time she assumed he was talking about the WIC participants, and it was not until she read the complaint that she knew he was talking about the State people. She noted that WIC participants often had to be coaxed into going back into a store because of rude treatment there and embarrassment caused to them there.

The day following the inspection of the Rock Springs store, Uresk inspected the Green River store and found it in noncompliance with the WIC program in many areas. When she discussed the inspection with Barbara Allen, Uresk advised Barbara Allen of the statement made by David Allen relative to not approving of the government paying people to sit around on their derrieres. Barbara Allen said that she agreed with her husband and that the program took up too much of their time. Barbara Allen asked if the 7-Eleven or Mini-Mart stores were on the program, and when she was told that they were, she asked why the program was not turned over to them since they needed the business, not Safeway. Later on it was determined that Barbara Allen was not distinguishing between the WIC program and the food stamp program, and that much of her criticism was of the food stamp program.

Upon returning to her office, Uresk telephonically advised Rock of her problems with the Allens. He asked her to put the information into a letter to him. She did so, writing a separate letter concerning each store. Appellants were discharged from their positions. In his deposition, Rock testified that Uresk's complaint was a major reason for discharge of David Allen, although he specified a number of customer and employee complaints which contributed to the action. He further testified that the major reason for discharge of Barbara Allen was customer and employee complaints, although Uresk's complaint contributed to the discharge cause.

■ Applying these facts to the elements of the tort of intentional interference with a contract, we find that appellants cannot recover as a matter of law. We have accepted the definitions relative to

the tort of intentional interference of a contract as set forth in the Restatement of Torts 2d. *Martin v. Wing*, Wyo., 667 P.2d 1159 (1983). Section 766, 4 Restatement of Torts 2d (1979), provides:

"One who intentionally and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." (Emphasis added.)

If the interference is not improper a necessary element of the tort is lacking. Section 772 of 4 Restatement of Torts 2d, supra, provides in pertinent part:

"One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

"(a) truthful information, * * * "

■ Common sense requires recognition of the propriety of one who is a customer or a business contact of a public-related enterprise to truthfully notify the owners or those in the management echelon of treatment accorded to such customer or business contact by those employed by the enterprise. Many businesses publicly request such comments. Some furnish forms with services or products upon which comments concerning such treatment are requested to be noted for return to the employer. Whether solicited or not, comments or notifications, truthfully given, cannot become actionable for tortious interference with a contract of employment. The comment to § 772 of 4 Restatement of Torts 2d reads:

"*b. Truthful information.* There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clear-

ly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested. * * * "

■ There is no issue or question concerning the information furnished by Uresk to appellants' employer. It was contained in two letters which were made exhibits to depositions. The record contains nothing to contest the truth of the contents of the letters. Thus, there is no genuine issue of a material fact, and, since the information upon which the action against Uresk and the State is premised is true, the action must fail as a matter of law.

## DISMISSAL OF COMPLAINT

Appellants word the issue relative to the dismissal of their complaint against Safeway and Rock as follows:

"Whether it is wrongful as contrary to public policy to discharge an employee for the reason that she is married to, and agrees with an opinion expressed by, another employee who has been discharged."

Section 5.01(2), W.R.A.P., requires appellants to set forth the issues presented for review, and perhaps we should limit our review in this case to the one issue set forth, *Cline v. Safeco Insurance Companies*, Wyo., 614 P.2d 1335 (1980). However, because of the table of contents contained in appellants' brief and the topical arrangement of the arguments therein, we will consider the statement of the issues to be in the nature of a typographical or unintentional error of omission and recognize that appellants contend that (1) the complaint stated a claim for breach of employment contract by Rock and Safeway, and (2) the complaint stated a tort claim for wrongful discharge as a matter of public

policy even if the employment of appellants was at will.[1]

"When considering a motion to dismiss a complaint, pursuant to Rule 12(b)(6), W.R.C.P., on the ground that it fails to state a claim on which relief can be granted, the facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to the plaintiffs. *State Highway Commission v. Bourne*, Wyo.1967, 425 P.2d 59. We therefore treat as true all the allegations of plaintiffs' complaint." *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733, 734 (1979).

In this instance the allegations of the complaint are generally the same as are the facts developed through discovery. The complaint reflected that copies of the letters sent by Uresk to Rock concerning her inspection of the Rock Springs and Green River stores were attached as Exhibits A and B "and [each] by this reference is incorporated herein."

The complaint characterized such letters as "inaccurate and malicious." Assuming the letters to be inaccurate, the fact that the information contained in them, accurate or not, had been conveyed to Rock and Safeway was alleged. Additionally, other allegations of the complaint verify some of the information contained in the letters. The complaint alleged that, in response to Uresk's request for a price survey, David Allen

"* * * refused to comply and expressed his opinion to the effect that he was tired of government people telling him how to do his job and asking him to do their jobs while they 'sat on [their] butts in Cheyenne'." (Bracketed material in original.)

The complaint also alleged that Barbara Allen advised Uresk that she agreed with her husband's comments and that,

"* * * URESK then solicited additional opinions of Plaintiff BARBARA ALLEN concerning the WIC program."

Further, the complaint alleged that, with reference to each appellant, the statements

by them, "and all other comments and expressions of his [her] feelings, attitudes or opinions, constituted speech which is protected," by the United States and Wyoming Constitutions.

## I. *Contract Claim*

■ Appellants did not allege the existence of contracts with definite terms of employment. Thus, the employment relationships were terminable at will by either party. The trial judge, the Honorable Kenneth G. Hamm, correctly set forth the legal result thereof in his opinion letter:

"*Casper Nat'l. Bank v. Curry*, 51 Wyo. 284, 296–7, 65 P.2d 1116 (Wyo.1937) states:

"'In the case of *Watson v. Gugino*, 204 N.Y. 535, 98 N.E. 18, it was held that as a contract of employment, wherein no period of service is specified, is terminable at the will of either party, where a person contracted to devote his whole time and attention to the business of a corporation, at a specified weekly wage, such contract could be concluded at any time at the option of either of the parties, ...'

"'A similar rule was stated in *The J.P. Schuh*, 223 Fed. 455 in this language:

"'"A hiring at so much a day, week, or month, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at a fixed rate for whatever time the party may serve. Unless the understanding of the parties was mutual that the service was to extend for a certain fixed and definite period, it is an indefinite hiring, and is determinable at the will of either party; and a recovery may be had for the services actually rendered." '

"Also, in *Long v. Forbes*, 58 Wyo. 533, 548, 136 P.2d 242 (Wyo.1943), the Court said:

"'The original contract of 1929 was a promise of defendant to employ and of plaintiff to serve for an indefinite

1. The issue listed as such by appellants is included in the tort claim contention.

time, commonly called a hiring at will. See authorities cited in *Casper National Bank v. Curry*, 51 Wyo. 284, 297, 65 P.2d 1116, 110 A.L.R. 360; Restatement of Agency, Section 442. "An employment of this sort, which is terminable at any time, is subject to modification at any moment by either party as a condition of its continuing at all." ' *"Lukens v. Goit*, 430 P.2d 607, 611 (Wyo.1967) said:

" 'Some argument is also advanced with respect to plaintiff's termination of the employment, but any argument in that regard overlooks the evidence that the employment here was a "hiring at will" and the plaintiff or defendants were free to terminate the employment at any time.'

"and cited the above cases as authority therefor.

"Furthermore, Section 1–23–105, W.S. 1977 provides:

" '(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith:

" '(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;'

"Plaintiffs have not alleged that there was a written agreement providing that they were to be employed for more than one year, and this being so the alleged oral contract of employment is unenforceable. They did allege that 'at the end of 3 years of their employment in Rock Springs and Green River' they 'would be afforded the opportunity to return to Salt Lake City to continue their employment with Safeway.' However, if that was indeed the agreement, it was not in writing and falls within the statute of frauds."

Subsequent to Judge Hamm's opinion letter, we affirmed that said in the cases cited by him. *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984).

In their brief, appellants refer to the allegation in the complaint that the agreement between David Allen and Safeway included the understanding referred to by Judge Hamm that "at the end of 3 years of their employment in Rock Springs and Green River, Plaintiff and his wife would be afforded the opportunity to return to Salt Lake City to continue their employment with SAFEWAY" as "a probable three-year term." Subjective understandings and expectations do not establish an employment contract with a definite term of duration. *Goodpaster v. Pfizer, Inc.*, 35 Wash.App. 199, 665 P.2d 414 (1983). A "probable" term of employment is by definition not a "definite" term. Specific provisions in an employment contract, other than one fixing a definite term of employment, do not make the contract other than one terminable at will. E.g., *Singh v. Cities Service Oil Company*, Okl., 554 P.2d 1367, 93 A.L.R.3d 654 (1976), and *Justice v. Stanley Aviation Corporation*, 35 Colo.App. 1, 530 P.2d 984 (1974), with specific provision for annual rate of compensation; *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977), and *Held v. American Linen Supply Co.*, 6 Utah 2d 106, 307 P.2d 210 (1957), with specific provision for seniority rights. The court in the Utah case stated:

" * * * Seniority rights depend upon an employer-employee relationship, they do not guarantee that relationship, they merely define the rights of the employee when that status is in existence. * * * "
307 P.2d at 212.

Inasmuch as appellants' employments were "at will," they could resign at any time without breaching their employment contracts, and Safeway could discharge them at any time without breaching the employment contracts.

## II. *Tort Claim*

However, appellants contend that notwithstanding the fact that their employments were on "at will" bases, their discharges were in violation of public policy and, therefore, render appellees subject to

a tort action for damages. The contention is without merit. The public policies contended by appellants to be involved (other than those concerning contract) are those with respect to free speech, pension rights, sex discrimination, and marriage status.

 To contend that an employee can talk in a derogatory fashion to customers or business contacts of his employer and be protected from disciplinary action by the employer by virtue of the right to speak freely is so obviously in error as to need little consideration. The constitutional right to speak freely is not an absolute right. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, *reh. denied* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *Adderley v. State of Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), *reh. denied* 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1967); *Cox v. State of Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Poulos v. State of New Hampshire,* 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953). The First Amendment to the United States Constitution has reference to government action curbing the right to speak freely. It provides in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech * * *."

Article 1, § 20 of the Wyoming Constitution recognizes the limitation of the right to speak freely. It provides in pertinent part:

"Every person may freely speak, write and publish on all subjects, *being responsible for the abuse of that right; * * *.*"

(Emphasis added.)

Provisions have been made for defamation actions when the right is abused, but redress for such abuse is not limited to such actions. In discharging appellants, Safeway was protecting a legitimate business interest in eliminating a cause or potential cause for loss of sales through WIC or to other customers. The fact that the discharges were occasioned by a verbal attack on a customer or business contact rather than a physical one does not make the discharges constitutionally improper. Of interest is the fact that appellants complain about interference with their freedom of speech, when their action against Uresk is premised upon her exercise of the right to speak freely.

 David Allen alleges that his discharge was "in part because Defendant SAFEWAY was attempting to avoid its pension obligations to him," but he also alleged that his pension rights had not vested at the time he was terminated. The prescribed conditions to qualify for a pension must be fulfilled before there exists an entitlement to receive them, and the pension may be modified or withdrawn prior to the time it vests. *Wong v. Boeing Company,* 26 Wash.App. 557, 613 P.2d 788 (1980); *Jackson v. Minidoka Irrigation District, supra; Dictaphone Corporation v. Clemons,* Colo.App., 488 P.2d 226, 50 A.L.R.3d 1266 (1971); *Parsley v. Wyoming Automotive Company,* Wyo., 395 P.2d 291 (1964); *Murphy v. American Home Products Corporation,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

 Barbara Allen's allegation that her discharge was contrary to public policy against sex discrimination and public policy favoring marriage status is inconsistent with the allegations in the complaint reflecting Safeway's discharge of both appellants: a male and a female. The only case cited by appellants in support of the argument relative to sex and marriage allegations, *Monge v. Beebe Rubber Company,* 114 N.H. 130, 316 A.2d 549, 62 A.L.R.3d 264 (1974), concerned the discharge of a female employee for refusing to date and have sexual relations with her supervisor. Such is a different public policy concern than in this case. Additionally, with reference to these allegations, appellants further allege that the discharges are in violation of the Wyoming Fair Employment Practices Act of 1965; i.e., § 27-9-101 et seq., W.S.1977 (June 1983 Replacement). The Act sets forth a specific procedure for processing complaints under it. Appellants' remedy for discriminatory discharges is under such procedure and not as here attempted.

A tort action premised on violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated. If there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy. *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 (10th Cir.1982), *cert. denied* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284; *Mahoney v. Crocker National Bank*, 571 F.Supp. 287, (D.C.Cal.1983). As said in *Wehr v. Burroughs Corporation*, 438 F.Supp. 1052, 1055 (D.C.Pa.1977):

> "It is clear then that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society." (Footnote omitted.)

The Wyoming Fair Employment Practices Act of 1965, § 27–9–101 et seq., W.S.1977 (June 1983 Replacement), and 42 U.S.C. § 2000e et seq. (1982) provide appellants with a remedy for discharge based on sex discrimination.

As noted in *Rompf v. John Q. Hammons Hotels, Inc.*, supra, we restricted our holding to the parameters of that case. We do likewise here. Counsel cite cases in which tort actions premised on violations of public policies have been upheld; e.g., *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975), discharge for serving on a jury; *Hansen v. Harrah's*, Nev., 675 P.2d 394 (1984); *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 973 (1973), and *Murphy v. City of Topeka-Shawnee County Department of Labor Services*, 6 Kan.App.2d 488, 630 P.2d 186 (1981), discharge in retaliation for filing worker's compensation claims. Such cases are not similar to this case. The complaint in this case does not state a tort claim upon which relief could be granted against Safeway and Rock based on appellants' discharges from employment.

Affirmed.