**Jody K. BINTNER, Plaintiff,**

v.

**BURLINGTON NORTHERN, INC., a Delaware corporation, Defendant.**

No. 93–CV–1040–J.

United States District Court,
D. Wyoming.

June 28, 1994.

Les Bowron, Frank R. Chapman, Beech Street Law Offices, Casper, WY, for Jody K. Bintner.

George E. Powers, Jr., John A. Coppede, Sundahl, Powers, Kapp & Martin, Cheyenne, WY, Lawrence M. Stroik, Burlington Northern Railroad Co., Fort Worth, TX, for Burlington Northern Inc., Burlington Northern Railroad Co.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

ALAN B. JOHNSON, Chief Judge.

The defendant's Motion to Dismiss came before the Court for hearing on March 24, 1994. Appearing for plaintiff were Les Bowron and Frank Chapman of Casper, Wyoming; appearing for defendant were George Powers and John Coppede of Cheyenne, Wyoming and Lawrence M. Stroike of Fort Worth, Texas (by telephone conference call). The Court, having considered the defendant's

motion, the plaintiff's responses thereto, the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

In plaintiff's complaint, she claims she was subjected to sexual harassment and hostile working conditions while she was employed by defendant as a locomotive engineer. She asserts federal and state claims of sex discrimination under 42 U.S.C. § 2000e and Wyo.Stat. § 27–9–101(a)(i), breach of public policy pursuant to 42 U.S.C. § 1981a and the public policy of the state of Wyoming, breach of contract, wrongful discharge, constructive firing, breach of collective bargaining agreement, intentional infliction of emotional distress, negligence, and breach of covenant of good faith and fair dealing. Her claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3), Wyo. Stat. § 27–9–101 et seq., and the federal and state constitutions.

Plaintiff claims she was subjected to sexual harassment in the form of a hostile work environment. Plaintiff alleges specifically that she was required to work in an environment which included propositions for sexual favors, physical attack, verbal catcalls and vulgarity, and written comments of a sexual and perverted nature. She claims she worked in an environment that demeaned women by virtue of sexual cartoons and graffiti on engines and cabooses, pictures and sexual graffiti on the walls of the defendant's facilities, specifically using plaintiff's name and suggesting that she participated in lewd and lascivious acts. Plaintiff alleges that this sort of activity went on for several years prior to the time she was forced to take medical and psychological leave from her position due to severe emotional distress.

Plaintiff asserts that she complained to authorized personnel and her Union agent, who in turn forwarded her complaint to the defendant. The defendant, she alleges, failed to take responsive action to eliminate or alleviate the hostile work environment. Plaintiff seeks damages including loss of wages, past, present and future, loss of earning capacity, loss of income, loss of fringe benefits including retirement, loss of enjoyment of life, severe emotional pain and suffering, mental anguish, consequential damages, costs and attorney's fees, and other damages to be proven at trial.

The defendant has filed a motion to dismiss alleging that arbitration under the Railway Labor Act provides the exclusive means of redress for plaintiff's claims. Defendant also asserts that plaintiff has failed to exhaust her state administrative remedies, that her claims for breach of covenant of good faith and fair dealing and violation of public policy are foreclosed as a matter of law in Wyoming, and that her claim for intentional infliction of emotional distress is preempted by federal law.

The defendant relies on the Supreme Court decision, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), as support for the argument that the Railway Labor Act requires all minor disputes, including those which are incidental to employment as well as those arising under or concerning the collective bargaining agreement, to be the subject of mandatory arbitration.

Plaintiff opposes the motion to dismiss, contesting the motion only as to her first, second, third and fifth claims for relief. In her responsive pleading, plaintiff stipulates that her fourth claim for relief (breach of contract) and seventh claim for relief (breach of covenant of good faith and fair dealing) must be dismissed as they involve interpretation of the underlying collective bargaining agreement. Plaintiff also stipulates that her sixth cause of action, negligence, may also be dismissed, relying on this Court's prior decision in *Wagner v. Campbell County, Wyoming*, 695 F.Supp. 512 (D.Wyo.1988).

However, plaintiff urges that all federal and state statutory and common law tort claims which clearly do not require an interpretation of the collective bargaining agreement must survive the defendant's motion to dismiss, relying upon the Tenth Circuit's decision in *Davies v. American Airlines, Inc.*, 971 F.2d 463 (10th Cir.1992).

### Standard of review for motions to dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

The Tenth Circuit, in *Pitts v. Turner and Boisseau Chartered*, 850 F.2d 650, 652 (10th

Cir.1988), *cert. denied* in 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) (quoting *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.), set forth the standard of review for dismissals pursuant to Fed.R.Civ.P. 12(b)(6):

> In reviewing a dismissal for failure to state a claim, we must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff. Dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' (Citations omitted.)

In considering a motion to dismiss, a court must take the allegations of the complaint at face value and must construe them most favorably to the plaintiff. The allegations in the plaintiff's complaint are presumed true. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). A court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. *Huxall v. First State Bank*, 842 F.2d 249, 250–51 (10th Cir.1988). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d at 1565.

### Discussion

#### 1. Arbitration

The Court concludes that the plaintiff is not barred from bringing her Title VII claims by the Railway Labor Act. No one has offered any evidence that the collective bargaining agreement requires employees to submit individual statutory claims to arbitration.

Defendant has relied on *Gilmer v. Interstate–Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), in support of its contention that the Railway Labor Act requires that plaintiff's claims be submitted to mandatory arbitration under the collective bargaining agreement. This Court disagrees that *Gilmer* is dispositive.

In *Gilmer*, the plaintiff had brought suit against his employer in federal court, alleging that he had been discharged from his employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA). The employer moved to compel arbitration of plaintiff's ADEA claim. In that case, the plaintiff, in his application for registration as a securities representative, had agreed "to arbitrate any dispute, claim or controversy" arising between him and his employer. *Gilmer*, 500 U.S. at 21–22, 111 S.Ct. at 1650. Plaintiff argued that the arbitration agreement he had signed required arbitration only of contractual disputes. The Supreme Court concluded that the agreement he had signed, however, also required the arbitration of his statutory claims, and held that the agreement therefore barred plaintiff's ADEA claim. The Supreme Court stated that:

> Although all statutory claims may not be appropriate for arbitration, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

*Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652, quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The principle that derives from *Gilmer* and *Mitsubishi* is that "individual employees who agree to arbitrate disputes with their employers must arbitrate Title VII claims." *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 145 (D.Conn.1993).[1]

Applying the *Claps* court's analysis, this Court finds that the collective bargaining agreement does not require arbitration of plaintiff's statutory Title VII claim in this case. *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141 (D.Conn.1993). The *Claps v. Moliterno Stone Sales, Inc.* court rejected the same argument advanced by the defendant in this case, stating that:

---

1. Citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 935 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir.1991).

The defendants' challenge to the plaintiff's Title VII claims would, in effect, require the court to hold that collective-bargaining agreements may require employees to arbitrate both contractual and statutory claims. Neither *Gardner–Denver* [*Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)] nor *Gilmer* supports this conclusion. First, the holding in *Gardner–Denver* was based on the assumption that the collective-bargaining process could, in some circumstances, pose a threat to the protection of individual statutory rights. The Court noted that collective bargaining is a "majoritarian process" that may subordinate the interests of individual employees to the good of union members as a group. This tension between individual and group interests, the Court concluded, should not be permitted to compromise statutory rights that Congress had conferred on individual employees under Title VII.... The Court also observed in *Gardner–Denver* that labor arbitrators who conduct grievance procedures are charged with interpreting and applying private contracts, not federal statutes. In light of this lack of expertise and legal authority, the Court concluded that labor arbitrators should not be entrusted with the enforcement of employees' rights under Title VII.... In sum, the decision in *Gardner–Denver* was grounded in a concern about the dangers that collective-bargaining agreements might pose to individual employees' statutory rights.

There is nothing in *Gilmer* to suggest that the Court abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective-bargaining process. It is true, of course, that *Gilmer* permits employees individually to enter contracts under which they agree to submit statutory claims to arbitration. Indeed, *Gilmer* apparently requires courts to presume that an agreement to arbitrate "any dispute, claim, or controversy" obligates an employee to arbitrate statutory as well as contractual claims.... But the Court went out of its way in *Gilmer* to contrast its holding in that case with its holdings in *Gardner–Denver, Barrentine* [*Barrentine v. Arkan-*

*sas–Best Freight System, Inc.*, 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981)], and *McDonald* [*McDonald v. West Branch*, 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984)]: the Court noted, among other things, that an important concern in those cases "was the tension between collective representation and individual statutory rights, a concern not applicable to the present case." ... In recognizing this distinction, the Court made it clear that its holding in *Gilmer* simply applied to contracts made by employees individually. Consequently, *Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of individual statutory rights through collective-bargaining agreements....

*Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. at 146–147 (some internal citations and footnotes omitted).

The approach of the *Claps v. Moliterno Stone Sales, Inc.* court is generally in accord with that of the Tenth Circuit. In *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249 (10th Cir.1988), the Tenth Circuit refused to hold that the Railway Labor Act (RLA) divested the district court of subject matter jurisdiction. The defendant employer had argued that the RLA gave the adjustment boards exclusive jurisdiction over disputes arising under a collective bargaining agreement, which was argued to include plaintiff's claim of a racially discriminatory discharge under 42 U.S.C. § 1981. The Tenth Circuit noted that the RLA provided a comprehensive framework for resolution of "major" and "minor" disputes in the railroad and airline industries.

"Minor" disputes are controversies over the meaning of an existing collective bargaining agreement in a particular fact situation generally involving one employee. They may be contrasted with "major disputes" which result when there is disagreement in the bargaining process for a new contract.... Minor disputes are subject to internal grievance process and if not settled, are submitted to an adjustment board. Judicial review of these boards' determinations has been characterized as

"among the narrowest known to the law," ... being limited to review for the board's failure to comply with the RLA, for a decision beyond the board's jurisdiction or fraud, 45 U.S.C. § 153, First (q).

*McAlester v. United Air Lines, Inc.,* 851 F.2d at 1252 (citations omitted). The employer argued that plaintiff's § 1981 claim (i.e., that plaintiff was disciplined less favorably than whites) was a claim that arose under his union contract, and that it was a "minor dispute" over which the RLA granted exclusive jurisdiction to an adjustment board as a dispute relating to the meaning or proper application of a particular provision of a collective bargaining agreement to one or more individuals. The Tenth Circuit disagreed. The plaintiff's claim of racial discrimination was brought under the statutory authority of § 1981, not the provisions of his collective bargaining agreement. In filing his lawsuit under § 1981, plaintiff asserted an independent statutory right accorded by Congress. The congressional policy that the RLA remedy for the resolution of minor disputes did not apply to independent rights of claims derived from *federal* statutory schemes such as the Federal Employer's Liability Act; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Fair Labor Standards Act, 29 U.S.C. §§ 201–19; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17. *McAlester v. United Air Lines, Inc.,* 851 F.2d at 1254 (citations omitted).

The *McAlester* analysis remains persuasive and is not incompatible with existing Supreme Court precedent. In the absence of a clear directive from the Tenth Circuit that district courts should employ some other analysis with respect to federal statutory claims, this Court is bound by *McAlester* and its progeny. *See Davies v. American Airlines, Inc.,* 971 F.2d 463 (10th Cir.1992). Under the RLA, the remedy of mandatory arbitration will be provided for when the dispute is a "minor dispute." "The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Davies v. American Airlines, Inc.,* 971 F.2d at 465, quoting *Consolidated Rail Corp. v. Railway Labor Executives' Association,* 491 U.S. 299, 305, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989).

Most importantly, the defendant has failed to point to any language or provision in the underlying collective bargaining agreement in the instant case in which the plaintiff agreed to submit her statutory claim to mandatory arbitration. The court in *Adams v. Burlington Northern Railroad Co.,* 843 F.Supp. 686 (D.Kan.1994) discussed this concept and *Gilmer:*

> Defendant contends that a reasonable interpretation [of the pre-*Gilmer* line of cases] is that *Gardner–Denver* stands only for the proposition that an employee who has already completed arbitration is not precluded from later bringing a statutory discrimination claim.
>
> A better interpretation is that the Supreme Court recognized that arbitration required under a collective bargaining agreement should not be the sole remedy for claims based on statutory rights. Nothing in the *Gilmer* decision changes this. The *Gilmer* Court itself, in discussing the earlier cases, noted "the difference between contractual rights under a collective-bargaining agreement and individual statutory rights." *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1657.
>
> Defendant would first require the plaintiffs to arbitrate both their contractual and statutory claims, as the plaintiff in *Gilmer* was required to do. Defendant next argues that even if the plaintiffs had some right to have their statutory claims heard in court, they must first complete the arbitration process. In this case, however, the plaintiffs' claims do not implicate the contract. As explained earlier, the contract language simply does not encompass all disputes arising out of employment. Under this framework, there is no basis for requiring plaintiffs to complete arbitration prior to bringing their statutory claims. *See Claps,* 819 F.Supp. at 147 (holding that plaintiff's failure to exhaust available grievance procedures does not bar her Title VII claims).

*Adams,* 843 F.Supp. at 691.

The Court declines to accept defendant's argument that existing caselaw and the RLA

require employees to submit their federal statutory claims, including Title VII claims, to grievance procedures provided for in the collective bargaining agreement, inasmuch as these are claims that may not be conclusively resolved by interpreting the existing collective bargaining agreement. Accordingly, the defendant's motion to dismiss plaintiff's complaint on such grounds shall be denied. Plaintiff's Title VII claim is not a minor dispute subject to mandatory arbitration under the RLA.

Under the foregoing analysis, the Court concludes that plaintiff's federal and state statutory and common law tort claims which may not be conclusively resolved by interpreting the existing collective bargaining agreement shall survive defendant's motion to dismiss, except as provided in the subsequent portions of this order.

### 2. Plaintiff's Fourth, Sixth and Seventh Claims for Relief

Plaintiff has conceded and stipulated that certain of her state law claims may be dismissed. Plaintiff states that her fourth cause of action for breach of contract involves interpretation of the collective bargaining agreement, as does her seventh cause of action for breach of the covenant of good faith and fair dealing. On that basis, and solely on that basis, this Court shall enter its order dismissing plaintiff's fourth and seventh causes of action. Plaintiff has also stipulated that her sixth cause of action for negligence, citing this court's decision in *Wagner v. Campbell County, Wyoming*, 695 F.Supp. 512 (D.Wyo.1988), may also be dismissed.

### 3. Public Policy and the Wyoming Fair Employment Practices Act

■ Defendant has also argued that plaintiff has failed to state a cognizable claim when she alleges the tort of wrongful termination in violation of state and federal public policy. Defendant has argued that in Wyoming, this claim only applies when a plaintiff is an at-will employee. This Court disagrees. In *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 283–84 (Wyo.1985), the Wyoming Supreme Court stated:

A tort action premised on a violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated. If there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy.... As said in *Wehr v. Burroughs Corporation*, 438 F.Supp. 1052, 1055 (D.C.Pa.1977):

"It is clear then that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society."

*Allen v. Safeway Stores, Inc.*, 699 P.2d at 283–84 (some internal citations and footnote omitted).

■ The *Allen* court then held that the Wyoming Fair Employment Practices Act of 1965, § 27–9–101 et seq., W.S.1977 (June 1983 Replacement), and 42 U.S.C. § 2000e et seq. (1982) provided the appellants in that case with a remedy for discharge based on sex discrimination. *See also Griess v. Consolidated Freightways Corp. of Delaware*, 776 P.2d 752 (Wyo.1989). The fact that an employee may or may not be an at-will employee is not germane to analysis set forth in *Allen*. Contrary to plaintiff's assertions in this case, she has a remedy available to protect her interests. Title VII is a remedy available to protect the interests of plaintiff, the aggrieved employee. Consequently, plaintiff's second cause of action for the tort of breach of public policy must be dismissed. *See also Gustafson v. Bridger Coal Co.*, 834 F.Supp. 352, 355 (D.Wyo.1993).

The Court is not persuaded by plaintiff's argument that she has **no other remedy available** to her because some of the incidents of the hostile work environment alleged occurred prior to the passage of the

Civil Rights Act of 1991, 42 U.S.C. § 1981a. While the Act did expand the damages recoverable to an employee, it did not create a new remedy. The Supreme Court, in *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), determined that the Civil Rights Act of 1991 does not apply to cases arising before its enactment on November 21, 1991. The Supreme Court's extensive analysis caused it to conclude that the Civil Rights Act of 1991 does not apply to permit recovery of compensatory and punitive damages for preenactment conduct.

Plaintiff's argument that she has no remedy available to her because the Civil Rights Act of 1991 is not retroactive must fail. She fails to acknowledge that *prior* to enactment of the 1991 Act, the Wyoming Supreme Court had already determined that the Wyoming Fair Employment Practices Act of 1965, § 27–9–101 et seq., W.S.1977 (June 1983 Replacement), and 42 U.S.C. § 2000e et seq (1982) provided a remedy for discharge based on sex discrimination.[2] The allegations in plaintiff's complaint are not such that this Court need fashion a "public policy" remedy when remedies are already available for vindication of plaintiff's sex discrimination claims. Accordingly, plaintiff's second cause of action for the tort of breach of public policy shall be dismissed.

■ Defendant has also argued that plaintiff's claim based upon the Wyoming Fair Employment Practices Act should be dismissed. None of the statutory language indicates that the Wyoming Fair Employment Practices Act, Wyo.Stat. § 27–9–101 et seq. is an exclusive remedy for discrimination in employment. Plaintiff did exhaust her administrative remedies, contrary to the assertions of the defendant. She obtained a right-to-sue letter from the EEOC prior to filing suit in this Court.

In *Hendry v. Schneider*, 1993 WL 443815, 63 Fair Empl.Prac.Cas. (BNA) 463, 64 Empl.

Prac.Dec. ¶ 42,914 (D.Wyo.1993), Judge Brimmer provides an analysis of Wyoming's administrative procedures for handling and investigating allegations of unfair employment practices. Under these established procedures, the Department of Employment is the agency charged under Wyoming scheme to handle and investigate claims of unfair employment practices by employers in the first instance. *Id.*, 1993 WL 443815, at *3.

> Pursuant to a worksharing agreement, the EEOC contracts with the Department, where the Department is given limited authority and investigative responsibility over certain unfair employment claims in the state. An employee may file a grievance with the Department within 90 days of the alleged occurrence of the unfair employment practice. Once a claim is filed, the Department has exclusive jurisdiction over the matter for a period of 180 days. During that time, the Department acts as a neutral body and pursues mediation efforts between the parties. Generally, if the Department is unable to assist the parties in reaching an agreement after those 180 days, then the complainant has several options available under the statute. She may file an appeal to either the Commissioner of the Department (within twenty days) or to the EEOC itself (within fifteen days), *see* Wyo.Stat. § 29–7–106 to –108 (1990), or she may simply terminate the entire administrative process and request a "right-to-sue" letter directly from the EEOC. If the latter avenue is selected, then the administrative process is complete, and the complainant's recourse would be to exercise the rights contained in the right-to-sue letter, namely, to file suit in federal court within ninety (90) days of receipt of the letter.

*Hendry v. Schneider*, 1993 WL 443815, at *3.

That administrative process has been exhausted in this case, the complaint having

---

**2.** "To prove a hostile work environment claim under Title VII, the plaintiff must show: (1) that the conduct in question was unwelcome; (2) that the harassment was based on sex; (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Ball v. City of Cheyenne*, 845 F.Supp. 803, 809 (D.Wyo.1993). Offensive conduct and events have provided the basis of hostile work environment sexual harassment claims are described in numerous other cases. *See e.g., Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486 (M.D.Fla.1991); *Hansel v. Public Service Co. of Colorado*, 778 F.Supp. 1126 (D.Colo.1991).

been timely filed after receiving a right-to-sue letter from the EEOC. Defendant's arguments are without merit. Accordingly, defendant's motion to dismiss plaintiff's complaint on such ground shall be denied.

### 4. Intentional Infliction of Emotional Distress

■ Finally, the defendant urges this court to dismiss plaintiff's claim for intentional infliction of emotional distress. This tort has been discussed by this court recently. In *Gustafson v. Bridger Coal Co.,* 834 F.Supp. 352 (D.Wyo.1993), the court cited and quoted from *Leithead v. American Colloid Co.,* 721 P.2d 1059, 1065 (Wyo.1986), in which the Wyoming Supreme Court recognized the tort of intentional infliction of emotional distress. "The tort occurs when '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another....'" *Gustafson v. Bridger Coal Co.,* 834 F.Supp. at 355 (quoting from *Leithead,* which cites Restatement (Second) of Torts § 46 (1965)).

Additionally:

In order to maintain an action for intentional infliction of emotional distress, there must be outrageous conduct "which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." [*Leithead v. American Colloid Co.,* 721 P.2d] at 1066. For the plaintiff to recover for intentional infliction of emotional distress, the distress inflicted must be so severe that no reasonable person could be expected to endure. *Id.* at 1066, 1067.

*Ball v. City of Cheyenne,* 845 F.Supp. 803, 814 (D.Wyo.1993).

In the instant case, this Court is not persuaded that plaintiff cannot prove sufficient facts entitling her to relief on the claim of intentional infliction of emotional distress. In her Complaint, at pages 4–5, ¶ 8, she alleges that she was:

subjected to a hostile work environment which consistently degraded women. Specifically, Plaintiff was required to work in an environment which included propositions for sexual favors, physical attack, verbal catcalls and vulgarity as well as written comments of a sexual and perverted nature. Most recently Plaintiff was subjected to working in an environment that demeaned women by virtue of sexual cartoons and graffiti drawn upon Defendant's engines and cabooses, pictures and sexual graffiti on the walls of Defendant's facilities using Plaintiff's names which suggested Plaintiff's participation in lewd and lascivious acts.

Applying the applicable standard of review where dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief, this Court concludes that defendant's motion to dismiss plaintiff's complaint as to her fifth claim for relief, intentional infliction of emotional distress, must be denied.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss plaintiff's entire complaint for the reason that the Railway Labor Act requires mandatory arbitration of her claims for relief shall be, and is, **DENIED.** It is further

**ORDERED** that defendant's motion to dismiss plaintiff's first claim for relief, Title VII, shall be, and is, **DENIED.** It is further

**ORDERED** that defendant's motion to dismiss plaintiff's second claim for relief, tort for breach of public policy, shall be, and is, **GRANTED.** It is further

**ORDERED** that defendant's motion to dismiss plaintiff's third claim for relief, based upon Wyo.Stat. § 27–9–105(a)(i), for having failed to exhaust her administrative remedies, shall be, and is, **DENIED.** It is further

**ORDERED** that defendant's motion to dismiss as to plaintiff fifth claim for relief, intentional infliction of emotional distress, shall be, and is, **DENIED.** It is further

**ORDERED** that defendant's motion to dismiss plaintiff's fourth claim for relief (breach of contract), sixth claim for relief (negligence), and seventh claim for relief (breach of the covenant of good-faith and fair dealing), pursuant to stipulation of plaintiff, shall be, and is, **GRANTED.** Plaintiff's

fourth, sixth, and seventh claims for relief are hereby **DISMISSED.**