2009 WY 56

**James KOLAR, Appellant (Plaintiff),**

v.

**R & P, INC., Appellee (Defendant).**

**No. S–08–0116.**

Supreme Court of Wyoming.

April 21, 2009.

---

Representing Appellant: Richard J. Mulligan of Mulligan Law Office, and Heather Noble, Jackson, Wyoming. Argument by Ms. Noble.

Representing Appellee: Stefan J. Fodor of Fodor Law Office, P.C., Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, James Stanley Kolar (Kolar), was employed by Appellee, R & P, Inc. (R & P), from 1997 until 2004. Kolar experienced some health problems and underwent several surgeries and their associated recuperative periods during that time. Thereafter, Kolar was fired from his job. According to R & P, that termination was premised on his poor performance as an assistant manager. Kolar filed a claim with the Department of Employment Fair Employment Program (DEFEP) alleging that his discharge was based on R & P's perception that he was disabled. DEFEP attempted to conciliate Kolar's claim and when that failed to produce a result, his case was referred to the Equal Employment Opportunity Commission (EEOC). On July 16, 2006, the EEOC issued a Notice of Right to Sue, and informed Kolar that it was ending its processing of the claim. Kolar then filed the instant lawsuit in Teton County on September 22, 2006. The district court declined to address Kolar's claim associated with his asserted disability on the basis that he had failed to exhaust his administrative remedies. Kolar appealed from that order. We will affirm.

**ISSUES**

[¶ 2] Kolar presents these issues:

—When an employee sued his employer for wrongful discharge in violation of public policy, did the district court err in dismissing that claim on the ground that another remedy existed, even though the employee had filed a complaint with the State of Wyoming's Fair Employment Program, and that agency had determined that the employer had engaged in discrimination on the basis of disability, had attempted unsuccessfully to mediate settlement of the complaint and then had dismissed the matter for failure to conciliate?

—Does an alternate remedy exist to protect against job discrimination on the basis of disability by employers with less than 15 employees, when state law bars such discrimination by those employers, but the only remedy provided is an administrative process where the Wyoming Fair Employment Program investigates and then attempts to mediate a settlement, so that an employer can effectively bar the discharged employee from recovering anything through the administrative process simply by refusing to settle?

R & P queries:

Was the district court correct in dismissing employee's claim for tort in violation of discharge against public policy by finding that another remedy existed, thus barring the claim in tort?

Does the Wyoming Fair Employment Practices Act provide a sufficient remedy to protect employees from job discrimination such that the tort of wrongful termination in violation of public policy is not available?

## FACTS AND PROCEEDINGS

[¶ 3] Kolar worked for R & P (which is the corporate name of the Ace Hardware Store in Jackson) from August of 1997 until September 25, 2004. At that time he was terminated from his employment for poor performance. He was given five weeks severance pay in connection with his termination. However, in the years preceding his firing, Kolar had experienced a series of physical problems which required surgeries on both of his ankles and on his spine as the result of a condition known as "connective tissue disorder." Most of the time he was away from work he was on either sick leave or vacation leave, but near the end of his employment he asked to take time off without pay because he had no remaining sick or vacation time left.

[¶ 4] In a document entitled Charge of Discrimination which was received by DEFEP on December 22, 2004, Kolar asserted that his employer regarded him as disabled and that he was denied a reasonable accommodation. That charge was filed pursuant to the Wyoming Fair Employment Practices Act of 1965. Under the provisions of Wyo. Stat. Ann. § 27-9-105(a)(i) (LexisNexis 2007), "[i]t is a discriminatory or unfair employment practice ... [f]or an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation or the terms, conditions or privileges of employment against, a qualified disabled person...." Wyo. Stat. Ann. § 27-9-105(d) provides: "As used in this section 'qualified disabled person' means a disabled person who is capable of performing a particular job, or who would be capable of performing a particular job with reasonable accommodation to his disability." That Act defines "employer" as "... the state of Wyoming or any political subdivision or board, commission, department, institution or school district thereof, and every other person employing two (2) or more employees within the state; but it does not mean religious organizations or associations." Wyo. Stat. Ann. § 27-9-102(b)(LexisNexis 2007). R & P employed 12 persons.[1]

[¶ 5] Of particular importance in this case are the provisions of Wyo. Stat. Ann. § 27-9-106:

(a) Any person claiming to be aggrieved by a discriminatory or unfair employment practice may, personally or through his attorney, make, sign and file with the department within six (6) months of the alleged violation a verified, written complaint in duplicate which shall state the name and address of the person, employer, employment agency or labor organization alleged to have committed the discriminatory or unfair employment practice, and which shall set forth the particulars of the claim

---

1. 42 U.S.C. § 12111(5) defines "employer" as: "... a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person."

and contain other information as shall be required by the department. The department shall investigate to determine the validity of the charges and issue a determination thereupon.

(b) through (j) Repealed by Laws 2001, ch. 162, § 2.

(k) **If the employer, employment agency, labor organization or employee is aggrieved by the department's determination, the aggrieved party may request a fair hearing. The fair hearing shall be conducted pursuant to the Wyoming Administrative Procedure Act.**

(m) The department shall issue an order within fourteen (14) days of the decision being rendered, requiring the employer, employment agency or labor organization to comply with the hearing officer's decision. If the employer, employment agency or labor organization does not timely appeal or comply with the order within thirty (30) days, the department may petition the appropriate district court for enforcement of the order.

(n) Where the hearing officer determines that the employer, employment agency or labor organization has engaged in any discriminatory or unfair employment practice as defined in this chapter, the hearing officer's decision may:

(i) Require the employer, employment agency or labor organization to cease and desist from the discriminatory or unfair practice;

(ii) Require remedial action which may include hiring, retaining, reinstating or upgrading of employees, referring of applications for employment by a respondent employment agency or the restoration to membership by a respondent labor organization;

(iii) Require the posting of notices, the making of reports as to the manner of compliance and any other relief that the hearing officer deems necessary and appropriate to make the complainant whole; or

(iv) Require the employer, employment agency or labor organization to pay backpay or front pay. [Emphasis added.]

[¶ 6] The proceedings before the DEFEP were conducted in accordance with the Rules and Regulations of the DEFEP. 3 *Weil's Code of Wyoming Rules,* 025 140 003-1 through 003-3 (July 2006). Kolar's charge contained these details:

1. I am a member of the protected groups, disabled and regarded as disabled.

2. My disability substantially limits a major life activity.

3. I am otherwise qualified for the job.

4. My employer failed to make a reasonable accommodation for my disability when such accommodation would not have placed an undue hardship on my employer.

a) I was employed as an assistant manager for my employer.

b) On September 14, 2004 I asked the employer's owner if I could have temporary light duty.

c) My employer gave me temporary light duty work for the time period of September 15-18, 2004.

5. Despite my satisfactory job performance, I was discharged.

a) On September 23, 2004 my employer discharged me for having, "too many health problems."

b) On September 23, 2004, my employer's owner made the statement, "this job is killing you."

6. After my discharge, the job remained available or was filled by someone not of my protected groups.

Attached to the Charge of Discrimination was Kolar's affidavit which set out information very similar to that quoted immediately above.

[¶ 7] In a document entitled Response to Charge of Discrimination and Employer's Position Statement dated January 11, 2005, R & P denied the gravamen of Kolar's complaint and contended that his termination was brought about by Kolar's "inability to perform one or more essential functions of his job, his inability to work with other managers and floor personnel, and his inability to show up for work."

[¶ 8] In a document entitled Complainant's Response to Respondent's Response to Charge and Employer's Position Statement, dated January 24, 2005, Kolar denied the assertions made in R & P's response and iterated his previous allegation of discrimination based on his employer's perception of him as being disabled.

[¶ 9] In an eleven-page document entitled Determination, DEFEP addressed the merits of Kolar's charges in detail. Citing from 42 U.S.C. § 12111, DEFEP noted that a qualified person with a disability means: "An individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Continuing, DEFEP noted:

The Tenth Circuit [Court of Appeals], which governs employers in the State of Wyoming, has held that the *prima facie* elements under the ADA require an employee demonstrate:

1) That s/he is 'disabled' within the meaning of the ADA;

2) That s/he is qualified with or without reasonable accommodation; and

3) That s/he was discriminated against because of his/her disability.

The ADA defines disability as:

1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual:

2) A record of such impairment; or

3) Being regarded as having such impairment. 42 U.S.C. § 12102(2).

. . . .

Evidence shows that [Kolar's] various medical impairments did not substantially impact his ability to perform household chores or care for himself. Evidence indicates [Kolar] required minimal aid in preparing to shower following ankle surgery and some aid in tying his shoes and changing a dressing following neck surgery. In all instances such aid was short lived as evidence indicates [Kolar] recovered from each successive surgery. [Kolar] further indicates he is not presently substantially limited in a major life activity.

[¶ 10] Although DEFEP determined that Kolar was not limited in any major life activity, it also concluded that R & P regarded him as substantially limited in the major life activity of working. In addition, the DEFEP concluded that R & P's beliefs concerning Kolar did not appear to be based upon valid medical evidence, but upon vague doctor's notes and assumptions made by R & P after consulting with Kolar. The DEFEP also concluded that the sorts of assumptions made by R & P can "stand as strong evidence that it engaged in discrimination." Continuing, the DEFEP found that Kolar presented a *prima facie* case for being regarded as disabled by R & P, and that R & P's reasons for discharging Kolar lacked credibility and were pretextual in nature. In concluding its thorough review of the evidence and the pertinent authorities, the DEFEP found:

1. [R & P] regarded [Kolar] as disabled.

2. [R & P] considered [Kolar] substantially limited in a major life activity.

3. [R & P] failed to provide a reasonable accommodation where such an accommodation would not prove an undue hardship to [R & P].

4. [R & P] discharged [Kolar] because of [R & P's] regard for [Kolar] as disabled.

[¶ 11] On January 3, 2006, the Labor Standards Division of the Department of Employment sent Kolar a letter indicating there was reasonable cause to believe Kolar's charge to be true. Attached to that letter was a Determination and Conciliation Agreement which purported to provide Kolar with full relief, although it was a "negotiable" agreement. The parties were directed to submit "conciliation" offers by January 17, 2006. On January 24, 2006, the Labor Standards Division informed Kolar that the conciliation process had not been successful and his file was being forwarded to the Equal Employment Opportunity Commission [EEOC] in Denver. Included in that letter was this advisement: "The EEOC has other options to consider under these procedures. They may litigate on behalf of Complainant, allow Complainant to sue on his/her own behalf in Federal District Court, or they may attempt further conciliation." Kolar was also

informed in that letter that the matter had been closed as "a failure to conciliate."

[¶ 12] On June 16, 2006, Kolar's attorney wrote to the EEOC indicating that previous correspondence had produced no response and asking what proceedings the EEOC contemplated on Kolar's behalf. Under date of July 19, 2006, the EEOC sent Kolar a Notice of Right to Sue (Issued on Request). It informed Kolar:

> Notice to Person Aggrieved:
>
> **Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act** (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court *WITHIN 90 DAYS*** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[¶ 13] On September 22, 2006, Kolar filed his civil suit in the Ninth Judicial District. The complaint stated two causes of action, one for breach of his employment contract, and a second for discharge in violation of public policy. A trial was held before the district court on November 27–28, 2007. In its Judgment entered on February 4, 2008, the district court made detailed findings. The district court found that Kolar was not an "at will" employee; however, it also concluded that Kolar was discharged in good faith. Kolar does not challenge that aspect of the judgment. With respect to Kolar's claim that he was discharged contrary to public policy, the district court determined that Kolar had not exhausted his administrative remedies because "if there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy." *Hoflund v. Airport Golf Club,* 2005 WY 17, ¶ 14, 105 P.3d 1079, 1084 (Wyo.2005) (quoting *Allen v. Safeway Stores, Inc.,* 699 P.2d 277, 284 (Wyo.1985)). The district court held that prior to final agency action, it had no jurisdiction to hear an appeal, and be-

cause if another remedy existed, the tort of wrongful termination in violation of public policy was not available.

[¶ 14] On February 8, 2008, Kolar filed a motion to amend the judgment, contending that the district court was compelled to find that Kolar had exhausted his administrative remedies and that the district court must reach the merits of his tort claim for discharge in violation of public policy. In a document filed on February 14, 2008, R & P agreed that Kolar had exhausted his administrative remedies before filing the instant suit. The district court considered those papers and iterated its original findings that there was an alternative administrative remedy in the form of a fair hearing before the DEFEP, from which an aggrieved party could seek review under the Administrative Procedures Act.

### DISCUSSION

[¶ 15] In *Hoflund,* we restated the law applicable to a circumstance such as that at hand:

> In *Allen v. Safeway Stores, Inc.,* 699 P.2d 277 (Wyo.1985), this Court made it clear that if another remedy for violation of a social policy which resulted in the discharge of an employee exists, no separate court action will lie. Therein, we stated:
>
>> A tort action premised on violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated. If there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy. *Viestenz v. Fleming Companies, Inc.,* 681 F.2d 699 (10th Cir.1982), *cert. denied* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284; *Mahoney v. Crocker National Bank,* 571 F.Supp. 287, (D.C.Cal.1983). As said in *Wehr v. Burroughs Corporation,* 438 F.Supp. 1052, 1055 (D.C.Pa.1977):
>>
>>> "It is clear then that the whole rationale undergirding the public policy ex-

ception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society." (Footnote omitted.)

The Wyoming Fair Employment Practices Act of 1965, § 27–9–101 et seq., W.S.1977 (June 1983 Replacement), and 42 U.S.C. § 2000e et seq. (1982) provide appellants with a remedy for discharge based on sex discrimination.

As noted in *Rompf v. John Q. Hammons Hotels, Inc.,* [685 P.2d 25 (Wyo. 1984),] we restricted our holding to the parameters of that case. We do likewise here. Counsel cite cases in which tort actions premised on violations of public policies have been upheld; e.g., *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975), discharge for serving on a jury; *Hansen v. Harrah's, Nev.,* [100 Nev. 60,] 675 P.2d 394 (1984); *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 973 (1973), and *Murphy v. City of Topeka–Shawnee County Department of Labor Services,* 6 Kan.App.2d 488, 630 P.2d 186 (1981), discharge in retaliation for filing worker's compensation claims. Such cases are not similar to this case. The complaint in this case does not state a tort claim upon which relief could be granted against Safeway and Rock based on appellants' discharges from employment. *Allen,* 699 P.2d at 284. In *Allen,* the Allens argued that even though their employment was "at will," their discharge was in violation of public policy and, therefore, they could assert a tort claim for damages.

We concluded that both the Wyoming Fair Employment Practices Act (FEPA), Wyo. Stat. §§ 27–9–101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. 2000e et seq., provided the Allens with a remedy for discrimination on the basis of sex. Thus, because these administrative processes set forth a specific procedure for processing the Allens' complaints and the Allens had not followed these procedures, the Allens could not recover through the courts. The same situation exists here. *Hoflund,* ¶ 14, 105 P.3d at 1084.

[¶ 16] DEFEP's statutory role and the broad range of relief which it is authorized to award to a complainant is set out above. DEFEP has adopted rules and regulations in furtherance of its statutory authority. Section 4(h) of those regulations provides that if a determination is made that the conciliation process has failed, either party may request that the complaint be referred to an independent hearing officer for a hearing. 3 *Weil's Code of Wyoming Rules, supra,* 025 140 003–1 through 003–2. Section 5 of the regulations describes more fully the "Fair Hearing" process. Id. at 003–3. Kolar failed to avail himself of that "fair hearing process."

## CONCLUSION

[¶ 17] We conclude the district court did not err in declining to address Kolar's claim based on violation of a well-recognized public policy—discrimination based on disability or the perception of disability—because Kolar had not exhausted his administrative remedies. The Judgment of the district court is affirmed.